UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

THE ESTATE OF LULA LEONA HENDRIX
a/k/a LEONA L. HENDRIX, by and through
ANDREW JOSEPH HENDRIX a/k/a Andy
Hendrix, and LINDA WILLISON, Personal
Representatives,

                Plaintiff,

v.                                      Case No.  5:05-cv-494-Oc-10GRJ

PROVIDENT GROUP-CITRUS HEALTH AND
REHABILITATION CENTER, LLC, d/b/a Citrus
Health and Rehabilitation Center, PROVIDENT
FOUNDATION, INC., a/k/a Provident
Foundation, Inc. of Georgia d/b/a Provident
Group, ALLEN CURTIS, a/k/a Allen Reedy
Curtis, MARY BLINDA KELDER MCCLEAN,

                Defendants.
_____

## REPORT AND RECOMMENDATION[1]

      Pending before the Court is Plaintiff's Motion To Remand Case, Alternative

Motion To Show Cause And Request For Attorney's Fees and Costs. (Doc. 15.)

Defendants have filed a response in opposition and, thus, the matter is now ripe for

review. For the following reasons, Plaintiff's Motion to Remand this case, is due to be

**GRANTED**.

## I.  BACKGROUND

      The decedent, Lula Leona Hendrix, was a citizen of the state of Florida at the

time of her death.[2]  Ms. Hendrix's personal representatives, Andrew Joseph Hendrix

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636 (2000), and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] *See* Doc. 15, ¶ 3. Ms. Hendrix died on July 22, 2004. Doc. 2, ¶ 33.

and Linda Willison, filed this action on behalf of the Estate of Lula Leona Hendrix.

Pursuant to 28 U.S.C. § 1332(c)(2), for the purpose of determining diversity jurisdiction,

the personal representatives of the estate are considered citizens of the state of the

decedent.[3]

Defendant Provident Group-Citrus Health and Rehabilitation Center, LLC ("Citrus

Health and Rehabilitation Center") is a Delaware limited liability company authorized to

do business in Florida.[4] Defendant Provident Foundation, Inc. ("Provident Foundation")

is a Georgia Corporation authorized to do business in Florida, and the managing

member of Citrus Health and Rehabilitation Center.[5] Defendant Allen Curtis ("Curtis") is

a resident of the State of Florida and is the Administrator at Citrus Health and

Rehabilitation Center.[6] Defendant Mary Blinda Kelder McClean ("McClean") is a resident

of the State of Florida and is the Director of Nursing at Citrus Health and Rehabilitation

Center.[7] Curtis and McClean will hereinafter be referred to as the Non-Diverse

Defendants. Citrus Health and Rehabilitation Center was the licensee of Provident

Foundation which operated the center where Ms. Hendrix resided from July 13, 2003

until her discharge on July 15, 2004.[8]

---

[3] "[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . ."  28 U.S.C. § 1332(c)(2).

[4] Doc. 2, ¶ 4.

[5] *See id.* ¶ 5.

[6] *See id.* ¶ 7.

[7] *See id.* ¶ 8.

[8] *See id.* ¶¶ 9-10, 2.

On October 19, 2005, Plaintiff filed this action in the Circuit Court of the Fifth Judicial Circuit in and for Citrus County, Florida. Plaintiff's Complaint purports to allege causes of action against Defendants based on the care and treatment of Ms. Hendrix while a resident at Citrus Health and Rehabilitation Center. Plaintiff brings claims against all Defendants for damages styled as: non-lethal negligence (Count I), lethal negligence (Count II), and lethal wrongful death (Count III). Plaintiff also brings a claim for  breach of fiduciary duty solely against Citrus Health and Rehabilitation Center (Count IV).[9]

With respect to the first three counts in the Complaint, Plaintiff specifically alleges that during the course of Ms. Hendrix's stay at Citrus Health and Rehabilitation Center, the Defendants failed to provide proper hygiene, failed to protect her from the development and worsening of pressure sores, failed to prevent unexplained weight loss, failed to prevent dehydration, failed to monitor and treat Ms. Hendrix for symptoms of infection, failed to prevent skin tears and unexplained bruises, failed to properly assess and treat her physical, mental, and emotional problems, failed to provide a safe environment, failed to prevent delays in the provision of care, failed to provide adequate preventative custodial skin care, and failed to provide consistent and appropriate documentation.[10] Plaintiff alleges that such negligent care caused Ms. Hendrix to suffer multiple pressure sores, bruises, skin tears, and infections as well as bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the

_____

[9] *See id.*

[10] *See id.*  ¶¶ 17-18, 24-25, 31-32.

3

enjoyment of life, and the expense of hospitalization and medical treatment for pre-existing conditions and conditions allegedly caused by Defendants' negligence which ultimately led to Ms. Hendrix's death.[11]

With respect to the claim for breach of fiduciary duty, Plaintiff alleges that Citrus Health and Rehabilitation Center intentionally, or with reckless disregard, negligently failed adequately to hire, train, and staff the facility; failed to provide the proper staff for the promised care and services; and that Defendant failed to develop and implement policies and procedures regarding corporate, financial, and accounting practices sufficient to ensure that fiduciary duties were not breached.[12] According to Plaintiff, such failures caused loss, injury, and damages to Ms. Hendrix.[13]

On December 9, 2005, Defendants removed the case to this Court on the basis of 28 U.S.C. §§ 1332, 1441(a), and 1446.[14] Although the Plaintiff and the Non-Diverse Defendants are citizens of the State of Florida, removal was based on diversity jurisdiction. According to Defendants, Plaintiff fraudulently joined the Non-Diverse Defendants, and in their absence, this case should be heard in federal court based upon its jurisdictional authority outlined by 28 U.S.C. §1332(a)(1). Specifically, Defendants  contend that Plaintiff fraudulently joined the Non-Diverse Defendants solely to defeat diversity jurisdiction.[15]

---

[11] *See id.* ¶¶ 19, 26, 33-34. Plaintiff also seeks to recover funeral and other expenses. *See id.* ¶34.

[12] *See* Doc. 1.

[13] *See* Doc. 2, ¶¶ 50, 52-53.

[14] *See id.* ¶ 48.

[15] *See* Doc. 21.

On January 5, 2006, Plaintiff filed the instant Motion to Remand (Doc. 15) arguing that Defendants failed to establish federal diversity jurisdiction in its Notice of Removal. Plaintiff asserts that it did not fraudulently join the Non-Diverse Defendants because it has pled a colorable claim under Florida's Nursing Homes and Related Health Care Facilities law,[16] and relevant case law, which provides that nursing home administrators such as the Non-Diverse Defendants are amenable to suit.[17] Plaintiff also contends that Florida law allows an officer or agent of a corporation to be held individually liable for a tort, even if the tort is committed within the scope of the agent's employment where the officer of agent participates in the tort.[18] Lastly, Plaintiff requests attorney's fees and reimbursement for costs incurred for the time and resources spent in remanding this action.[19]

## II. <u>DISCUSSION</u>

### *A. Fraudulent Joinder*

It is "by now axiomatic that the inferior federal courts are courts of limited jurisdiction," empowered "to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution and which have been entrusted to them by a jurisdictional grant authorized by Congress."[20] A defendant may "remove a

---

[16] *See* F.S.A. § 400.001 *et seq.*

[17] *See* Doc. 16 at 5-9.

[18] *See* Doc. 16 at 4-5.

[19] *See* Doc. 16 at 9.

[20] <u>Univ. of S. Ala. v. The Am. Tobacco Co.</u>, 168 F.3d 405, 409 (11th Cir. 1999) (citing <u>Taylor v. Appleton</u>, 30 F.3d 1365, 1367 (11th Cir.1994)).

case to federal court only if the district court would have had jurisdiction over the case had the case been brought there originally."[21] District courts have original jurisdiction over diversity cases, pursuant to 28 U.S.C. §1332, and over matters arising under federal law, pursuant to 28 U.S.C. §1331.[22]

Where a plaintiff has objected to a defendant's removal, the burden of proof is upon the defendant, as the removing party, to show that the action was properly removed.[23] While district courts are encouraged to resolve all doubts about jurisdiction in favor of remand to state court,[24] courts "should be cautious about remand, lest it erroneously deprive [a] defendant of the right to a federal forum."[25]

Fraudulent joinder is a judicially-created doctrine that provides an exception to the requirement of complete diversity.[26] While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P.  56(b)", the jurisdictional inquiry "must not subsume substantive determination."[27] It follows that the court "must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties

---

[21] Whitt v. Sherman Int'l Corp., 147 F.3d 1325, 1329 (11ᵗʰ Cir. 1998).

[22] Id.

[23] See Woods v. Firestone Tire & Rubber Co., 560 F. Supp. 588, 590 (S.D. Fla. 1983).

[24] See Univ. of S. Ala., 168 F.3d at 411.

[25] Tran v. Waste Mgmt., Inc., 290 F. Supp. 2d 1286, 1292 (M.D. Fla. 2003).

[26] Triggs v. John Crump Toyota, Inc., 154 F. 3d 1284, 1287 (11ᵗʰ Cir. 1998).

[27] Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (citing B, Inc. v. Miller Brewing Co., 663 F. 2d 545, 549 (5ᵗʰ Cir. Unit A 1981)).

about state substantive law in favor of the plaintiff."[28] These determinations are based upon Plaintiff's pleadings at the time of removal, and on the affidavits and deposition transcripts submitted by the parties.[29] Here, Defendants have submitted affidavits from the Non-Diverse Defendants[30] which the Court may rely upon in addition to Plaintiff's Complaint.

Joinder has been deemed fraudulent in three situations.[31] The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant.[32] The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts.[33] The Eleventh Circuit recognized the third situation of fraudulent joinder in *Tapscott v. MS Dealer Service Corp.*[34] -- i.e., where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.[35] Defendants only raise the first type of fraudulent joinder in their Notice of Removal.[36]

---

[28] *Id.*

[29] *Id.* at 1538.

[30] *See* Doc. 21, Exs. A, B.

[31] *See* Riggs, 154 F.3d at 1287

[32] *See id. citing* Choker v. Amoco Oil Co., 709 F. 2d 1433, 1440 (11th Cir. 1983), *superseded by statute on other grounds, see* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F. 2d 1533 (11th Cir. 1993).

[33] *See id.*

[34] 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds,* Cohen v. Office Depot, Inc., 204 F.3d. 1069 (11th Cir. 2000).

[35] Triggs, 154 F.3d at 1287(citing Tapscott, 77 F. 3d at 1355.)

[36] Doc. 1 at ¶¶ 12-14.

Whether Plaintiff can sustain a claim against the Non-Diverse Defendants is a pure question of Florida law. Plaintiff's claims against the Non-Diverse Defendants are based on the premise that in their individual capacities, Curtis, as the Administrator, and McClean, as the Director of Nursing of Citrus Health and Rehabilitation Center, failed to exercise a reasonable duty of care in carrying out their responsibilities towards Plaintiff. These responsibilities included properly hiring, training, and supervising licensed nurses at the facility,[37] in addition to providing a "safe environment," "prevent[ing] delays in the provision of care," and "provid[ing] consistent and appropriate documentation."[38] Due to these failures in the provision of care, Plaintiff alleges that the Non-Diverse Defendants participated in the negligent acts which caused injury to Plaintiff. Plaintiff contends that even as nursing home administrators, under both Florida statutory and relevant case law, these Non-Diverse Defendants may be held liable for their negligence.

Defendants counter that the Non-Diverse Defendants did not personally participate in the alleged negligent acts and any actions they took were within the course and scope of their employment. Defendants have submitted affidavits from the Non-Diverse Defendants asserting only that they are not liable because they did not provide "any direct or 'hands-on' resident care" to Ms. Hendrix.[39] Thus, according to Defendants, under agency principles the Non-Diverse Defendants cannot be held personally liable in tort.

---

[37] *See* Doc. 2, ¶ 16.

[38] *Id.* ¶ 17.

[39] Doc. 21, Exs. A, B.

8

The starting point for the analysis is the statute itself. Florida Statute §400.023[40] provides the exclusive remedy for a plaintiff bringing a cause of action in negligence for the personal injury or death of a nursing home resident.[41] The statute provides in relevant part that:

> the claimant shall have the burden of proving, by a preponderance of the evidence, that: (a) [t]he defendant owed a duty to the resident; (b) [t]he defendant breached the duty to the resident; (c) [t]he breach of the duty is a legal cause of loss, injury, death or damage to the resident; and (d) [t]he resident sustained loss, injury, death, or damages as a result of the breach.

The statute provides that the defendant in such an action may be "a licensee, person, or entity" with the duty to exercise reasonable care.

Specifically, § 400.023(5) provides in relevant part that "[n]othing in this subsection shall be construed to protect a licensee, person, or entity from liability for the failure to provide a resident with appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff." As the Administrator for the nursing home and the Director of Nursing, the Non-Diverse Defendants are persons within the statute and, therefore, could be held individually and personally liable if they failed to provide a resident with adequate care with regard to their supervisory role in the administration of nursing services. The statute does not specify that a person must give "direct" or "hands-on" care, in order to be liable and

---

[40] The Florida legislature has revised this statute on two previous occasions. The Court has relied on opinions interpreting previous versions of this statute, but the differences in the previous versions are not relevant to the issues before this Court.

[41] Romano *ex rel.* Romano v. Manor Care, Inc., 861 So.2d 59, 63 (Fla. Dist. Ct. App. 2003)(discussing the history and purpose of the statute).

further affirmatively provides that a "person" can be liable for failing to properly oversee the planning, intervention, and evaluation of the care of a resident.

Neither party cites to any Florida case law in which the court was called upon to address whether a nursing home administrator could be held individually liable for nursing home abuse. However, there are reported Florida cases involving verdicts against a nursing home administrator for nursing home negligence[42] and Florida law upholding a criminal conviction against an administrator for nursing home abuse.[43] While not directly on point these cases suggest that under particulars facts a nursing home administrator or director of nursing could be held liable under the statute.

Moreover, while not controlling, there are cases from other jurisdictions that are highly instructive with regard to the issue of whether supervisory nursing home personnel, who did not provide "hands-on" care, can be individually liable. For example, in *Gray v. Beverly Enterprises-Mississippi., Inc.*,[44] the court found that direct, "hands-on" contact was not necessary to impose personal liability under Mississippi law, but that "allegations of the in-state defendants' misfeasance and nonfeasance are sufficient to state a claim."[45]

With regard to Defendants' argument that the Non-Diverse Defendants cannot be held individually liable under Florida law for acts committed within the scope of their

---

[42] *See* First Healthcare Corp. v. Hamilton, 740 So. 2d 1189 (Fla. Dist. Ct. App. 1999), *overruled on other grounds by* Fla. Convalescent Ctrs v. Somberg, 840 So.2d 998 (Fla. 2003).

[43] Mitchell v. State, 491 So. 2d 596 (Fla. Dist. Ct. App. 1986).

[44] 390 F.3d 400, 409-410 (5th Cir. 2004).

[45] *Id.* at 410.

employment, Defendants misinterpret Florida law on this issue. While Florida law does not recognize individual liability of an officer of a corporation based solely upon vicarious liability, where the corporate officer personally participates in some manner in the tort the corporate officer may be held individually liable even if the acts were performed within the scope of their employment or were committed as corporate officers or agents.[46] The simple fact that the Non-Diverse Defendants did not provide "direct or hands-on resident care" to the decedent does not fully answer the question of whether they can be held personally liable. Plaintiff does not claim that the Non-Diverse Defendants were deficient or negligent with regard to direct care they provided to the decedent. Rather, Plaintiff's cause of action against the Non-Diverse Defendants is premised entirely upon the alleged failure of the Non-Diverse Defendants to act with reasonable care in supervising the nursing personnel and "fail[ing] to provide a safe environment, fail[ing] to prevent delays in the provision of care . . . and fail[ing] to provide consistent and appropriate documentation." Thus, the gist of the claims against the Non-Diverse Defendants relates to their failure to perform their responsibilities as supervisors - and not their failure to perform their responsibilities as hands-on care givers. Florida courts have found, in other employment settings, supervisory liability

---

[46] White-Wilson Med. Ctr. v. Dayta Consultants, Inc., 486 So.2d 659, 661 (Fla. Dist. Ct. App. 1986); Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co., 125 F. Supp. 2d 1093, 1104 (S.D. Fla. 2000) ("Florida courts uniformly hold that if an officer, director, or agent commits *or participates* in a tort, whether or not his actions are by authority of the corporation or in furtherance of the corporate business, that individual will be liable to third persons injured by his actions, regardless of whether liability attaches to the corporation for the tort.") (emphasis added); *see also,* Estate of Catherine C. Monroe v. Beverly Enters., Inc., No. 3:04-cv-0199-MPM-SAA (N.D. Miss. April 19, 2005) ("In cases where an administrator does, in fact, "actively participate" in tortious conduct which injures nursing home residents, there would appear to be no valid reason for the law to immunize those administrators from personal liability.")(unpublished opinion, Doc. 16, Ex. 2).

where the alleged injuries result from the failure of the supervisor to perform his or her responsibilities.[47]

There is no doubt that the claims against the Non-Diverse Defendants relate to their failure to perform as supervisors and not care givers. Plaintiff also allege in the Complaint that Defendants owed a duty to "[Ms. Hendrix] to properly hire, retain and supervise nurses on Defendants' staff and to ensure that any such licensed nurses exercised care consistent with the prevailing professional standard of care for a nurse."[48] To establish a prima facie case for negligent hiring in Florida, the Plaintiff needs to show that "prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness."[49] To prove negligent retention, the Plaintiff must demonstrate that "during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment."[50]

Plaintiff has asserted that members of the staff failed in numerous ways to provide adequate care to Ms. Hendrix which resulted in injury and, ultimately, death.[51]

---

[47] *See* White v. Wal-Mart Stores, Inc., 918 So.2d 357, 358 (Fla. Dist. Ct. App. 2005) (holding that where the manager of a store "was directly responsible for carrying out certain responsibilities; that he negligently failed to do so; and that, as a result, [Plaintiff] was injured[, ] [s]uch allegations are legally sufficient to withstand a motion to dismiss for failure to state a cause of action."

[48] Doc. 2, ¶ 16.

[49] Watson v. City of Hialeah, 552 So.2d 1146, 1148 n.2 (Fla. Dist. Ct. App. 1989); *see also* Brown v. Zaveri, 164 F. Supp. 2d 1354, 1360 (S.D. Fla. 2001).

[50] *Id.*

[51] *See* Doc. 2, ¶ 16.

Whether Plaintiff can prove that the Non-Diverse Defendants were negligent in hiring the staff and nurses who cared for the decedent, or whether the Non-Diverse Defendants were negligent in retaining the staff, remains to be proven. However, at this juncture, because the Court is only being called upon to determine whether there is a "possibility of a claim under Florida law" for removal purposes, the Court is prohibited from weighing the merits of Plaintiff's claims against the Non-Diverse Defendants.[52]

Based upon the bare-bones pleading in the Complaint[53] - and taking into account the affidavits submitted by the Non-Diverse Defendants - the Court concludes that Plaintiff has pled the possibility of a claim under Florida law that the Non-Diverse Defendants negligently hired, retained, and supervised members of the nursing home staff. Accordingly, the Court concludes that Defendants have failed to establish fraudulent joinder of the Non-Diverse Defendants and, therefore, the Court cannot ignore the citizenship of the Non-Diverse Defendants in determining whether the Court has diversity jurisdiction over the claims in this case. Because Curtis and McClean are

---

[52] In the Eleventh Circuit,

   [w]hen considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.  If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the defendants, the federal court must find that joinder was proper and remand the case to state court.

Crowe v. Coleman, 113 F.3d 1536, 1537 (11th Cir. 1997) (internal quotations and citation omitted).

[53] Unlike Florida law, which requires ultimate fact pleading, in federal court, a plaintiff only has to satisfy the requirements of notice pleading under Fed. R. Civ. P. 8. Notice pleading merely requires "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."

citizens of Florida there is a lack of complete diversity between all Plaintiffs and all Defendants, thus, mandating remand of this action to state court.

### B. Attorney's Fees

Plaintiff requests that the Court award them the attorney's fees and costs incurred as a result of obtaining the remand of this action.  The United States Supreme Court recently held that "[a]bsent unusual circumstances, courts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, where an objective reasonable basis exists, fees should be denied."[54] The Court concludes that although Defendants' arguments in support of fraudulent joinder were rejected by the Court,  Defendants' arguments in support of removal were objectively reasonable. Accordingly, Plaintiff's request for attorney's fees and costs is due to be **DENIED**.

### III.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's Motion For Remand (Doc. 15) be **GRANTED**, and Plaintiff's request for attorney's fees and costs be **DENIED**.

**IN CHAMBERS** in Ocala, Florida, on April 19, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:
　　The Honorable Wm. Terrell Hodges
　　Senior United States District Judge

　　Counsel of Record

---

[54]Martin v. Franklin Capital Corp., 126 S. Ct. 704, 711 (2005).

14